PRYOR, Circuit Judge,
concurring in part and dissenting in part:
I concur in part and respectfully dissent in part. I concur with the majority’s opinion that the Anti-Injunction Act bars relit-igation of some counts brought against Banc of America Securities, but I would affirm the injunction against prosecuting the other counts too. I agree with the majority about the governing law; my partial disagreement concerns only the record. Central to my disagreement with the majority is whether SFM alleged that Banc of America Securities participated in a conspiracy of conversion in the 2012 complaint. The clear answer is no. The district court correctly ruled that the 2012 complaint rehashes in greater detail the 2006 complaint. The 2012 complaint presents no new allegations — only more facts— and is barred by the Anti-Injunction Act.
I divide my discussion in three parts. First, I explain that the conspiracy count alleges only a conspiracy to conceal information from SFM. Second, I explain that the alleged conspiracy to conceal is not materially different from the concealment alleged in the 2006 complaint. Third, I explain that the remaining count for breach of contract should also be enjoined.

A. SFM Has Not Alleged that Banc of America Securities Was a Conspirator in the Conversion of its Funds.

The 2012 complaint alleges more facts about the same trades, but more facts do not excuse us from invoking the relitigation exception. Contrary to the majority’s conclusion, the conspiracy count of the 2012 complaint defines the scope of the conspiracy as one of fraudulent concealment, not of conversion: “FISHER conspired -with Kim, Lee, Shoreland Trading, and [Banc of America Securities] to mislead DR. MELGEN, and conceal the truth from him concerning the fraud and conversion of SFM funds.” 2012 State Complaint ¶ 85 (emphasis added). These allegations are no different from the allegations of constructive fraud in the 2006 complaint. See 2006 Federal Complaint ¶¶ 79-81. By way of comparison, that complaint stated, “By concealing information which BANC OF AMERICA SECURITIES, LLC had a duty to disclose, BANC OF AMERICA SECURITIES, LLC committed a constructive fraud proximately causing the loss of the value of the assets held in the account of SFM Holdings, Ltd. at BANC OF AMERICA SE *1348 CURITIES, LLC.” Id. at ¶ 80 (emphasis added).
The majority acknowledges that both complaints involve the tort of fraudulent concealment, but the majority takes it upon itself to amend the 2012 complaint to allege a tort that SFM never alleged against Banc of America Securities- — conversion. The majority then uses its amendment to tie Banc of America Securities to the allegations of conversion levied against only Fisher in the 2012 complaint. And the majority improperly conflates the tort of conversion with a broker’s demand that Lee cover the large margin calls in the SFM account.
The majority argues that the 2012 complaint contains a “new narrative” about how SFM lost its money. Majority Op. at 1339-40. Hardly so. The 2012 complaint is a more detailed narrative about the conversion perpetuated by Kim and Lee’s Ponzi scheme, which SFM has now learned benefited Jerome Fisher. In particular, the 2012 complaint is a more detailed narrative of paragraph 39 of the 2006 complaint. That paragraph alleged that, before Lee transferred SFM’s assets to Shoreland Trading in November,
BANC OF AMERICA SECURITIES, LLC was permitting the assets of SFM Holdings to be traded in an omnibus account owned by Shoreland Trading, LLC. By this means Shoreland Trading, LLC was able to allocate trades among various accounts controlled by it including the account of SFM Holdings, Ltd. SFM Holdings, Ltd. did not authorize Shoreland Trading to trade or manage its account and had no knowledge that trading was being done in an omnibus account owned by Shoreland Trading, LLC and controlled by Won Lee.
2006 Federal Complaint ¶ 39 (emphasis added).
The misallocations in the omnibus account detailed in the 2006 complaint are the same “commingled” trades discussed in the 2012 complaint. 2012 State Complaint ¶¶ 26, 89, 93-97. In particular, paragraph 97 of the 2012 complaint states that the commingling was occurring in “the omnibus account.” Id. at ¶ 97. This misallocation or commingling of funds arose after Lee made “risky trades,” which were margin trades that resulted in huge margin calls. Compare 2006 Federal Complaint ¶¶ 40^4, with 2012 State Complaint ¶¶ 28, 30-32, 66, 85-94. Shoreland Trading, with Lee at the helm, covered the margin calls by commingling the funds in the “omnibus account” referenced in both complaints and misallocating gains and losses of customers, including SFM and Fisher. Compare 2006 Federal Complaint ¶ 39, 42, 46, with 2012 State Complaint ¶¶ 24, 66, 89. SFM alleges that this commingling could not have occurred “without the assistance of [Banc of America Securities],” 2012 State Complaint ¶ 93, which parallels the 2006 allegation that Banc of America Securities “permitted] the assets of SFM Holdings to be traded in an omnibus account,” 2006 Federal Complaint ¶ 39. Our Court has already held that it was the duty of Lee, the introducing broker, to sort out the gains and losses within that omnibus account. See SFM Holdings, Ltd. v. Banc of America Sec., LLC, 600 F.3d 1334, 1340 (11th Cir.2010). The only concern of Banc of America Securities was to ensure that the margin calls were met. See id. at 1338-40.
The majority would have us forget about paragraph 39 of the 2006 complaint. The majority insists that SFM alleged those facts “merely as an example” of the negligence of Banc of America Securities. Majority Op. at 1342-43. But SFM reincorporated those allegations into both counts for breach of fiduciary duty and fraudulent concealment. We cannot now ignore para *1349 graph 39 and allow SFM to relitigate those allegations because discovery unearthed more details about the omnibus account and Jerome Fisher. Contrary to the majority’s assertion, id. at 1342-43, the new allegations in the 2012 complaint that Fisher benefited from Lee’s wrongdoing has no bearing on the nature of the allegedly tortious wrongdoing committed by Banc of America Securities.
Satisfied with its new narrative, the majority goes on to propose that Banc of America Securities “actively facilitated]” the misallocation of gains and losses, but Banc of America Securities is not a conspirator in the conversion of SFM’s funds because it demanded that Lee satisfy the margin calls. Id. at 1340-41. The majority discusses only one instance of this so-called active facilitation — a conversation between a Banc of America Securities’s employee and Lee about upcoming margin calls. The majority then announces that the complaint describes “further interactions ... [that] demonstrate that [Banc of America Securities] knew Lee was intentionally allocating losses to SFM’s account and profits to Fisher’s account.” Id. at 1341. But where are these allegations?
We all agree that Lee made some bad trades that led to multimillion-dollar margin calls. And, as any brokerage would do, Banc of America Securities “demanded” Lee to cover the margin, which SFM alleged in both the 2006 and 2012 complaints. Compare 2006 Federal Complaint ¶ 42, with 2012 State Complaint ¶¶ 86-92. To cover the margin, Banc of America Securities required him to either add cash to customer accounts or to liquidate some of his holdings because it was clear that the equity in the account was insufficient collateral for the loan that Banc of America Securities agreed Lee could have. Specifically, paragraphs 87, 91, and 92 of the 2012 complaint allege that Banc of America Securities informed Lee that he had margin calls exceeding $5 million in some of his customer’s accounts and that Lee had to either “bring in money” or Banc of America Securities was going to sell shares in the omnibus account to cover the margin call. 2012 State Complaint ¶¶ 87, 91-92. I part ways with the majority when it takes these ordinary demands from a broker and calls them conversion, even though that allegation appears nowhere in the complaint.
Had SFM intended to peg Banc of America Securities with the tort of conversion, it would have realleged the allegations of conversion in the 2012 complaint against Banc of America Securities, but it did not. In particular, paragraphs 78 through 83 allege that Fisher, and only Fisher, was liable for converting the funds of SFM. If SFM intended to plead that Banc of America Securities was also liable as a co-conspirator in converting those funds, then SFM would have included Banc of America Securities in the count of conversion or realleged some of the paragraphs about Fisher’s conversion in the count of conspiracy. But SFM did not include Banc of America Securities in the count of conversion. Nor did it reallege paragraphs from that count in the count of conspiracy.
The conspiracy alleged in the 2012 complaint is a conspiracy to conceal by its plain terms. 2012 State Complaint ¶¶ 85, 96-97. In the same manner that SFM alleged that Banc of America Securities fraudulently “concealed] information” in the 2006 complaint, 2006 Federal Complaint ¶¶ 79-81, the conspiracy count of the 2012 complaint alleges that Banc of America Securities conspired “to mislead” and “conceal the truth,” 2012 State Complaint ¶ 85, that Banc of America Securities “never informed SFM or DR. MELGEN of these illegalities [perpetrated by Lee],” id. *1350 at ¶ 96, that Banc of America Securities “maintained secrecy” and “actively concealed from SFM the transactions in the Shoreland Trading omnibus account,” id. at ¶ 97, and that Banc of America Securities “was also concealing from Plaintiffs information concerning FISHER’S account statements,” id. at ¶ 98. The conspiracy alleged in the 2012 complaint is one of fraudulent concealment, not conversion.

B. The Nature of the Concealment Alleged in 2006 Is the Same as that Alleged in 2012.

The majority also erroneously concludes that the concealment alleged in 2006 was materially different from the concealment alleged in 2012. Majority Op. at 1342-43. The majority says that SFM alleged in 2006 that Banc of America Securities concealed only that it allowed Lee to control the account, that Lee had engaged in illegal short trades, and that Banc of America Securities directed Lee to leave the brokerage. Id. The majority contrasts that concealment with the “concealed acts of conversion” in the 2012 complaint. Id. at 1343.
A fairer comparison of the complaints is that both contain allegations that Banc of America Securities withheld two pieces of critical information concerning the SFM account. First, Banc of America Securities failed to inform SFM that Shoreland Trading, led by Kim and Lee, traded SFM’s funds in an omnibus account. Compare 2006 Federal Complaint ¶¶25, 39, 51, with 2012 State Complaint ¶¶ 66, 89, 97. Second, Banc of America Securities failed to inform SFM that Lee was misalloeating SFM’s funds before it transferred the remaining funds pursuant to the forged letter. Compare 2006 Federal Complaint ¶ 39, with 2012 State Complaint ¶¶ 26, 66,97.
The majority downplays the nature of the concealment in the 2006 complaint. In addition to the concealment described by the majority, 2006 Federal Complaint ¶ 75, SFM also alleged that Banc of America Securities concealed that it permitted Lee to trade SFM’s funds in an omnibus account. 2006 Federal Complaint ¶ 39. As a result, Shoreland Trading “was able to allocate trades among various accounts.” Id. SFM further alleged that “Banc of America Securities, LLC well knew [that] the SFM Holdings account was not an account of Won Lee and neither he nor Shoreland Trading, LLC had any authority to act in that account.” Id. at ¶ 46. And with that knowledge, Banc of America Securities “permitt[ed] an unauthorized person to make decisions concerning the account without the consent or knowledge of SFM Holdings, Ltd.” Id. That concealment “proximately caus[ed] the loss of the value of the assets” in the SFM account. Id. at ¶ 80.
To distinguish the 2006 allegations from the 2012 allegations, the majority places undue emphasis on the word “conversion” in the 2012 complaint, but the allegations of concealment in 2012 were the same as those in 2006. In both complaints, SFM alleged that Banc of America Securities concealed that Lee commingled funds from different customers. 2012 State Complaint ¶¶ 66, 89, 95, 97; see also 2006 Federal Complaint ¶ 39. As it alleged in 2006, SFM alleged in 2012 that Banc of America Securities “actively concealed from SFM the transactions in the Shoreland Trading omnibus account.” 2012 State Complaint ¶ 97. But nowhere in the 2012 complaint will you find an allegation that Banc of America Securities knew that Lee was misalloeating profits from SFM to cover Fisher’s losses. According to the conspiracy count of the 2012 complaint, Banc of America Securities concealed “that profits had been allocated to FISHER,” but that *1351 count does not allege that Banc of America Securities knew that these profits belonged to SFM. Id. at ¶ 97; see also id. at ¶ 90 (alleging Banc of America securities had “knowledge of [Lee’s] attempts” to “allocate losses” between SFM’s and Fisher’s accounts, but not alleging that Banc of America Securities knew Lee allocated SFM’s profits to Fisher). Only the second count in the 2012 complaint for conversion against Fisher, not Banc of America Securities, alleges that “FISHER received benefits from these improperly allocated trades, as funds from unauthorized trades and improper allocations that belonged to Plaintiffs were placed into his [Banc of America Securities] account.” Id. at ¶ 80.
As I see it, the allegation about misallo-cations in the omnibus account of paragraph 39 of the 2006 complaint bars SFM from relitigating these more detailed claims about the concealment of misalloca-tions as a result of the margin calls in the 2012 complaint. The conspiracy count of the 2012 complaint does not include an allegation that Banc of America Securities concealed that Lee allocated profits to Fisher that belonged to SFM. That count contains more details about the same theory of Lee’s misallocations in response to the margin calls. The district court was correct to enjoin SFM’s attempted relitigation of fraudulent concealment.

C. The District Court Was Correct to Enjoin the Remaining Count for Breach of Contract.

I also reject the majority’s conclusion that SFM may relitigate its claim that Banc of America Securities breached the Prime Brokerage Agreement. Majority Op. at 1344-45. The majority surmises that “the 2012 State Complaint advances a theory of harm that was not presented in its earlier federal lawsuit” and, as a result, “SFM must be permitted to pursue [the breach-of-contract allegations] upon remand to state court.” Id. at 1345. But, as I have discussed, the more detailed facts in the 2012 Complaint do not allege a conspiracy of conversion; those facts allege only that Banc of America Securities conspired to conceal facts from SFM about the loss of its funds.
The majority contends that the breach-of-contract allegations in the 2012 complaint are predicated on a new theory of harm, id. at 1344-45, but I cannot agree. SFM alleged in 2012 that “[Banc of America Securities] allowed Lee to trade in the SFM Account and to commingle funds without any authorization, and to disproportionately allocate assets between SFM’s account and FISHER’s account.” 2012 State Complaint ¶ 131(a). But SFM already alleged the same in 2006 by pleading that Banc of America Securities allowed Lee to place SFM’s account in an omnibus account with other customers and, as a result, Shoreland Trading “allocate[d] trades among various accounts” in that omnibus account. 2006 Federal Complaint ¶ 39. For these reasons, I cannot agree that Count VII of the 2012 complaint contains a new claim for breach of contract.
Let’s not confuse a presumption against preclusion with more details about the same conduct. The Supreme Court has instructed us that preclusion must be “clear beyond peradventure.” Smith v. Bayer Corp., — U.S. -, -, 131 S.Ct. 2368, 2376, 180 L.Ed.2d 341 (2011). That difficult standard has been satisfied in this appeal. For that reason, I would affirm.